AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| United States of America | ) |
|---|---|
| v. | ) |
| Austin HUNTER | ) Case No. 25-MJ-626 KK |
| | ) |
| Defendant(s) | ) |

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 3, 2025** in the county of **Cibola** in the District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) | Possession with intent to distribute 500 grams and more of a mixture and substance containing methamphtemine |
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) | Possession with intent to distribute 5 kilograms and more of a mixture and substance containing cocaine |
| 18 U.S.C. § 924(c)(1)(A)(i) | Possessing a firearm in furtherance of a drug trafficking crime. |

This criminal complaint is based on these facts:

Please see the attached affidavit of BIA Special Agent Jared Shupla, which is incorporated by reference and has been reviewed by AUSA Lou Mattei.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jared Shupla, BIA Special Agent
Printed name and title

Electronically submitted and telephonically sworn.

Date: 04/04/2025

_____
Judge's signature

City and state: Albuquerque, New Mexico

Honorable Kirtan Khalsa, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jared Shupla, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent (SA) with the Bureau of Indian Affairs (BIA), United States Department of the Interior, currently assigned to the Division of Drug Enforcement, and as such am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 and Title 21, of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18 and Title 21 of the United States Code, including violations which occur on Indian Reservations, also known as Indian Country, within the special Maritime and Territorial Jurisdiction of the United States.

    a. I began my law enforcement career in 2002 when I enlisted into the United States Army and served honorably for eight years active duty as a military policeman. I successfully completed Basic Combat Training and Advanced Individual Training, United States Army Military Police School. I received over 500 hours of law enforcement training techniques, focusing on investigative techniques, patrol skills, report riding, emergency vehicles operators' course, convoy security techniques, forward operating prisoner of war operations and military operations in urban terrain. While serving in the U.S. Army, I served as a Patrolman, Patrol Supervisor, Vehicle Coordinator, Driver, Team Leader, Squad Leader and Desk Sergeant.

    b. After being honorably discharged from the U.S. Army, in October 2010, I was employed with the Pueblo of Acoma Police Department as a Patrolman. I attended and graduated from the Federal Law Enforcement Training Center Land

1

Management Patrol Techniques class, where I served as squad leader. I was trained in the investigation of crimes including, but not limited to, DUIs, assaults, domestic violence, vehicle collisions, death investigations, and archeological violations.

c. In May of 2012, I was employed by the Santa Clara Tribal Police Department where I served as a police officer. As a police officer with Santa Clara Tribal Police Department, I upheld and enforced the laws and tribal customs of the Santa Clara Pueblo. I protected the property and lives of community members by patrolling assigned areas and addressed any suspicious individuals. I served as the Indian Highway Safety Officer for the Santa Clara Police Department. I enforced all traffic laws set forth by the Santa Clara Tribal Code within the exterior boundaries of the Santa Clara Pueblo which included intercity roads of the City of Española as well as the county roads of Rio Arriba County. I investigated allegations of DUIs and responded to traffic collisions. I coordinated and oversaw the operation of several DUI checkpoints. I served as a liaison for the Santa Clara Tribal Police Department in collaboration with the Rio Arriba DWI Program. I compiled statistics for all traffic stops, DUI arrests, traffic collisions and citations issued by the Tribal Police Department for the DWI program.

d. In October of 2016, I became a Federal K9 Officer with the BIA Division of Drug Enforcement. I conducted intercity and highway interaction with vehicles and individuals responsible for human trafficking, transportation of illegal narcotics, illegal weapons, and large sums of U.S. currency and off tribal land. I have conducted multiple investigations relating to violations of the Major Crimes Act and federal narcotic violations. I conducted several criminal narcotics

investigations in my respective assigned duty station and have issued summons through the Central Violations Bureau (CVB). I successfully completed a four-week K9 handlers' course in Muskogee, Oklahoma. I was trained to detect the change in behavior of my K9 partner which led to the detection of narcotics.

e. I am currently assigned to the Albuquerque Office Division of Drug Enforcement of the BIA as a Special Agent and have primary investigative responsibility in federal drug violations occurring in Indian Country. I am also a Task Force Officer with the Department of Homeland Security Albuquerque Office. I have completed the seven-week Department of the Interior Investigators training program in Brunswick, Georgia. I received training on conducting long-term investigations, crime scene processing, surveillance, report writing, control tactics and crime scene photography.

2. As a result of my personal participation in the investigation described herein and receiving oral reports from fellow officers and other concerned parties, I am familiar with the facts and circumstances described in this affidavit. This affidavit does not contain all facts known to me but rather only the information I believe necessary to establish probable cause for the requested complaint.

3. On the basis of my participation in this investigation, as well as my familiarity with other aspects of this investigation, I believe the facts contained in this affidavit establish probable cause for the issuance of a criminal complaint charging Austin HUNTER, year of birth 1989, with the following violations:

a. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine;

b. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute 5 kilograms and more of a mixture and substance containing cocaine; and

c. 18 U.S.C. § 924(c)(1)(A)(i), that being possessing a firearm in furtherance of a drug trafficking crime.

## PROBABLE CAUSE

4. On April 3, 2025, at approximately 6:04 p.m., BIA K9 Officer N. Jackson was on duty, in full uniform, in his marked patrol unit. Officer Jackson was conducting traffic enforcement on the eastbound lane of Interstate 40 near the mile marker 120. Officer Jackson observed what was later identified as a white commercial semi-truck bearing Florida license plate XE067H fail to signal while changing lanes. Officer Jackson knew this violated New Mexico Statute § 66-7-325. Officer Jackson also noticed the above vehicle did not display a current registration sticker. Officer Jackson knew this violated New Mexico Statute § 66-3-18(c).

5. Officer Jackson initiated a traffic stop of the vehicle based on these violations. As Officer Jackson pulled directly behind the commercial motor vehicle, Officer Jackson notified police dispatch of his location on Interstate 40 near mile marker 122, which is within the boundaries of the Pueblo of Laguna Indian Reservation. Upon initial contact, the driver and sole occupant was identified as Austin HUNTER.

6. During the enforcement stage of the traffic stop, Officer Jackson identified tradecraft associated with criminal activity based on discrepancies between the driver's electronic commercial travel logs and HUNTER's stated travel plans. Upon discovering the travel discrepancies, Officer Jackson asked HUNTER for his consent to search the vehicle, which HUNTER granted. HUNTER also advised that he had a firearm in the vehicle.

7. Officer Jackson searched the sleeper cabin area of the vehicle, where he found a black duffle bag and a black backpack. A later search of these bags revealed multiple plastic-wrapped bundles. Based on his training and experience, Officer Jackson knew that the manner in which these bundles were packaged was consistent with drugs packaged for distribution.

8. The bags were removed from the cabin area and placed on the ground at the rear of the semi-trailer. A certified narcotics detection canine was deployed on the bags and gave a positive alert on both of the bags.

9. All suspected narcotics were later transported to the Homeland Security Investigations (HSI) office where they were field-tested and weighed. In total, the bags contained approximately 41.5 gross pounds (around 18.8 gross kilograms) of suspected methamphetamine, which field-tested positive, and 40.38 pounds (around 18.3 gross kilograms) of suspected cocaine, which also field-tested positive. These drugs will be sent to a laboratory for further analysis. Based on my training and experience, these quantities of methamphetamine and cocaine are consistent with distribution, not personal use.

10. Additionally, I located a loaded Taurus .357 Magnum revolver, bearing serial number ACE876870, in the driver's seatback pocket of the vehicle. Based on a preliminary examination, I believe this was a genuine firearm that functioned as designed. Based on my training and experience, I know it is common for drug traffickers to possess firearms to protect themselves, their drug supplies, and their drug proceeds.

## CONCLUSION

11. Based on the forgoing information, there is probable cause to believe that HUNTER violated the following statutes:

    a. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine;

    b. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute 5 kilograms and more of a mixture and substance containing cocaine; and

    c. 18 U.S.C. § 924(c)(1)(A)(i), that being possessing a firearm in furtherance of a drug trafficking crime.

12. I swear that this information is true and correct to the best of my knowledge and belief.

13. This affidavit has been approved by Supervisory Assistant United States Attorney Lou Mattei.

*[signature]*
**Jared Shupla**
Special Agent
Bureau of Indian Affairs

Electronically signed and telephonically sworn on this the 4th day of April 2025.

*[signature]*
**Honorable Kirtan Khalsa**
United States Magistrate Judge